RIVERA ET AL. *v.* TIBOT ET AL.

APPEAL from the District Court of San Juan, First Section.

No. 44.—Decided December 18, 1906.

APPEAL—STATEMENT OF FACTS—STENOGRAPHER'S NOTES.—The stenographer's notes should not be copied in the statement of facts, and district judges should not approve the same when prepared in this manner, unless there is some special reason which makes it necessary to insert the evidence in the form of question and answer, which is rarely the case.

ACTION TO RECOVER PERSONAL PROPERTY—DAMAGES AND LOSSES BY RETENTION
    THEREOF.—In an action for the recovery of personal property illegally re-
    tained by the defendant, if the property is returned to the plaintiff he has a
    right to indemnity for the value of the use of the property so retained.
ID.—NEW TRIAL.—Where the amount of the indemnity granted by the court is
    not justified by the facts appearing from the record, and it becomes necessary
    to determine or clear up certain facts in order that the court may render
    judgment, a new trial should be ordered.

The facts are stated in the opinion.

*Mr. Texidor* for appellant.

*Mr. Freyre Barbosa* for respondent.

MR. JUSTICE MACLEARY delivered the opinion of the court.

This was a civil suit brought by Gumersindo Rivera and
Custodio Agosto against José Ramón Tibot and Andrés and
Juan Ocasio for damages and the possession of animals.
The facts may be briefly stated as follows:

Tibot, as the testamentary administrator of Fuentes,
brought a suit of forcible detainer, in the District Court of
San Juan, against the brothers Andrés and Juan Ocasio and
recovered judgment condemning them to vacate the premises
and to pay the costs. For the collection of these costs he
had execution issued and levied upon the following animals:

"First. A black cow with crumpled horns, weighing about 10
*arrobas* (250 pounds), with her calf, the former marked with the
initials 'E. Y.' on the right hip and 'C. A.' on the left shoulder.

"Second. Another black cow and calf, also weighing about 250
pounds, marked with the initials 'C. A.' on the left shoulder, and 'V.
F.' upside down on her right hip.

"Third. A brownish-yellow cow and calf, the cow weighing from
9 to 10 *arrobas* (or from 225 to 250 pounds).

"Fourth. A chestnut mare, 7½ hands high, with her filly colt,
which is mouse colored.

"Fifth. A hog."

The plaintiffs alleged that the animals which had been
levied upon belonged to them and not to the defendants Oca-
sio, and in their suit they prayed for the return of the ani-
mals, and for $342 damages for their detention; alleging that

they had been deprived of the value of the milk from the 3 cows, which was estimated to amount to 4 quarts a day from each cow—that is to say, 120 quarts per month, worth 5 cents for each quart, or $6 a month from each cow, and that they had been detained for nineteen months—thus claiming the damages for detention of the cows to reach the sum of $342, as aforesaid. They also claim that they have been deprived of the services of the mare, which they calculate to be worth 50 cents per day, or $95 for the nineteen months. Nothing is claimed for the use of the hog. The total damages claimed for detention of the animals amounts to $437. Two of the cows were claimed by Custodio Agosto, and the other cow, the mare and the hog were claimed by Gumersindo Rivera. No question of the improper joinder of the parties plaintiff was raised in the court below or in this court.

The answer of the defendant Tibot, consists entirely of a general and special denial of all the facts set forth in the plaintiffs' petition. The evidence, both documentary and oral, showed that the 2 cows claimed by the plaintiff Agosto were sold to him by certain parties; and it was further shown by witnesses that they had sold the other animals, to wit, the other 2 cows, the mare and the hog, to the other plaintiff, Gumersindo Rivera. All the animals prior to the levy remained in possession of the Ocasio brothers, who claimed to be pasturing them for the plaintiffs, Rivera and Agosto.

The judgment rendered by the district court, on the 2d of February, 1906, ordered that the defendant, José Ramón Tibot, return to the owner, the said plaintiff, Custodio Agosto, a black cow, 250 pounds in weight, with her calf, marked with the initials "E. Y." on the right hip, and "F. A." on the right shoulder, and the other black cow with a young calf, weighing about 250 pounds, marked "C. A." on the left shoulder, and "V. F." reversed upon the right hip, being the same property levied upon on the 23d of July, 1903, in the case of Tibot against Ocasio for forcible detainer, and that if it was not possible to deliver them, that he should pay their

value, according to expert valuation, and that he pay besides the sum of $100 as indemnity for the damages which had been occasioned and the loss of the products of the said cattle. And the court further resolved that the balance of the claim made by the petition could not be maintained, giving judgment in favor of the defendant Tibot as to that part of the demand, and condemning him to pay the costs of suit.

Each party filed a separate bill of exceptions within the proper time, which vary from each other somewhat in setting forth the facts, but agree substantially along the main lines. On the 28th of April Tibot took an appeal to this court from the judgment rendered by the district court by filing a proper notice of appeal in the court below. The stenographer's notes are contained in the record submitted for our examination which is the practice that has been repeatedly condemned by this court. Statements containing documents of that nature should not be approved by the trial judges, unless there is some special reason why the evidence adduced on the trial should be set forth in the form of question and answer, which rarely occurs.

Notice of appeal appears to have duly been given also by Gumersindo Rivera and Custodio Agosto; so that we have before us a cross-appeal prosecuted by both parties to the suit below.

The case came on to be heard in the Supreme Court on the 15th of October, all of the justices being present at the hearing. The appellant, Tibot, alleges as an error committed by the trial court an incorrect interpretation of article 1803 of the Civil Code of Porto Rico, now in force. That article reads as follows:

"A person who by an act or omission causes damage to another, when there is fault or negligence, shall be obliged to repair the·damage so done."

Let us then examine some authorities showing the rule for the measure of damages which should be applied in the

case at bar. They will be found to harmonize with the provisions of our statute just quoted.

At common law the measure of damages for the unlawful seizure of personal property depended to a considerable extent on the form of the action which might be brought in consequence thereof. But under our statutes, which are similar to those of California and Montana, this distinction becomes immaterial. This action being one for the recovery of personal property—that is to say, cows, horses, and hogs, and damages for their detention—is entirely similar to the case of *Morgan* v. *Reynolds*, decided by the Supreme Court of Montana in the year 1870, 1 Mont., 163. In the opinion rendered in that case, by Mr. Justice Knowles, the present case is fully covered. Damages in cases of this nature, where plaintiffs recover the specific personal property, which has been unlawfully detained, are measured by the value of the use of the animals from the date at which the defendant obtained possession of them until the day of the trial of the cause.

An eminent text-writer thus lays down the modern rule:

"If the plaintiff establishes his right to the property on the trial and it is restored to him on the writ, he can generally recover damages, only for the value of the use of the property during the detention, and any depreciation of its value while in the hands of the defendant." (Field on Damages, 659.)

In cases of trover, at common law, a different rule prevails. The present action, however, is in the nature of the common-law action of replevin. The plaintiffs seek to recover primarily the specific personal property detained (which are domestic animals), and have done so by the judgment of the court below. It was also proper that they should recover the value of the use of the property while so detained.

Mr. Greenleaf, in his work on Evidence, Volume II, page 276, says: "The damages should be precisely commensurated with the injury, and neither more nor less." And it is a general rule that damages should be the natural and proximate

consequence of the wrongful act complained of. It is certainly a proximate consequence to be deprived of the use of animals. The same rule is laid down by Mr. Sedgwick in his work on the Measure of Damages, pages 528 and 529, referring to cases in Maryland and Texas, where suit was brought for the detention of slaves.

Following the Montana case, we believe that the rule applied by the court below in regard to the measure of damages was correct.

The second error assigned is that the judgment appealed from disregards, or infringes upon, the legal principles relative to the origin of obligations, and that obligations derived from the law are not presumed, nor can any others be enforced except those expressly set forth in the Code or in special laws. The burden of the appellant's argument, under this assignment, is that the proof, adduced on the trial, does not justify a judgment for $100. There seems to be no objection made to that part of the judgment which requires the property—that is to say, the two cows—to be returned to the owner.

Let us briefly summarize the evidence considered by the court. The following facts appear from a condensation of the statements of fact as set out in the record.

On the trial there was presented both documentary and oral evidence; the first being a certificate issued by the secretary of the district court relating to the action prosecuted by Tibot against the brothers, Andrés and Juan Ocasio, showing that an attachment was levied on the property of Juan Ocasio requiring him to vacate the real estate held by him in possession. There was also an execution levied on a black cow and a dark brown cow and their calves, Ocasio stating at the time that the said animals belonged to Custodio Agosto. It also appears from the same certificate that, on the same day, an execution was levied on the property of Andrés Ocasio, including a mare, a cow and a hog, to secure the costs; Tibot being afterwards charged with the duty of keeping the said

animals in his custody. Also as documentary evidence there was presented, on the trial, by the plaintiff, a certificate showing the registration of a black cow in favor of Custodio Agosto, a bill of sale of a red pig in favor of Custodio Agosto; a certificate of sale of 4 cows of various colors and bearing different brands, a receipt of the *alcalde* certifying that Custodio Agosto presented a brand for cattle with the letters ''C. A.''; another private document, being a bill of sale, by Andrés Ocasio to Gumersindo Rivera, of a dark bay mare; a private certificate of sale from Ramón Zoya to Gumersindo Rivera of a brown buffalo cow; a certificate of the *alcalde* of Bayamón relating to a brand for cattle with the letters ''C. R.,'' presented for registration by Gumersindo Rivera.

And the plaintiffs introduced the following oral testimony of witnesses to wit: Ramón Zoya testified that he had sold to Gumersindo Rivera a yellowish-brown cow, giving a bill of sale therefor, which bill of sale was admitted in evidence after having been acknowledged by the witness; that Gumersindo Rivera had told him about two years since that the cow sold had been levied on; that the sale occurred in February, 1902, and that the cow was sent to pasture on a farm belonging to Andrés and Juan Ocasio; that he saw the cow delivered to Ramón Nieves.

Casiano Pérez, having before him a receipt presented by the plaintiffs, said that he had signed the same for Andrés Carrusinos—which seems to have been a nickname for the plaintiff—and that he was present when the mare referred to in the said receipt was sold.

Andrés Ocasio testified that he had sold a bay mare to Gumersindo Rivera, some three years past, giving him a receipt signed for him by Casiano Pérez, and that the sale was made on condition that the animal should be left in his possession for service, and that the price was 1 ounce ($16); that the said mare was attached while in his possession. During the examination of this witness the receipt, referring to the

mare before mentioned, was admitted in evidence, and marked No. 4.

Pascual Ríos, testified that he sold a pig to Custodio Agosto and acknowledges the private document relating to the sale, which document was admitted as evidence, and marked No. 5.

Demetrio Maldonado testified that he knew Custodio Agosto and stated that he had sold him 4 cows of different colors, and acknowledges the bill of sale delivered during the transaction, and adds that he saw the 2 black cows attached in Bayamón; he further stated that a cow may give 4, 5 or 6 quarts of milk, according to the pasture she is given and the care taken of her. During the examination of this witness the bill of sale of the 4 cows, signed by Demetrio Maldonado, and the certificate hereinbefore referred to, were admitted in evidence. The witness added that one of the cows attached was branded "E. Y.," for the reason that it formerly belonged to Enrique Yzquierdo, and states that he saw the cows levied on in front of the courthouse in Bayamón, where he was called upon to testify whether he had sold them to Custodio Agosto, and that he there acknowledged the fact; that the sale of the said cattle took place prior to the year 1898.

Andrés Ocasio testified that the average price of milk was 8 cents a quart, and that the cows attached in his possession gave daily about 4 quarts each, and that when he had that cow milk sold at 6 cents; and that he hired out the mare at 12½ cents, and that if he had needed another mare it would have cost him 50 cents or 75 cents per day; that the current price is $1 per day for hire, and that he hired her for $1 a day.

The defendant introduced as evidence the record of the suit for unlawful detainer prosecuted by José Ramón Tibot, as testamentary executor of José R. Fuentes, and the certificate of the will and, the plaintiff being willing, all of the record was admitted as evidence, in order that the judge

might study the same as much as necessary before deciding the case.

According to the statement of facts presented there was nothing in the evidence offered at the trial to justify the finding of $100 damages, instead of a greater or less amount. The value of the milk appears to have been at that time about 6 cents per quart, and the cows yielded about 4 quarts each per day, making the value of the daily product 48 cents. It seems that the animals were detained from the plaintiffs about nineteen months, or five hundred and seventy days, which at 48 cents per day would amount to $273.60. Of course the value of the care and attention, the labor of milking and the trouble of selling the milk or peddling it from house to house, the pasturage and the feed of the cows should be taken into consideration, but no evidence whatever appears in the record on these points. The court could hardly judicially know what such expenses would amount to. Fixing the damages at $100 appears to have been somewhat in the nature of guess work; or a desire to reach a decision such as would be satisfactory to all parties.

The judgment denying the plaintiff, Gumersindo Rivera any relief whatever, or deciding against him on the question of ownership in the mare and colt, the cow and the hog, seems to have been based on the disbelief of the testimony of Andrés Ocasio because the animals sold to Rivera had been left in the custody of Ocasio. Similar evidence might have been received in regard to the hog and the cow. On these points the statement of facts is not clear.

As there are matters of fact which need to be ascertained before this case can be properly decided this court cannot now render a judgment herein, but, in accordance with section No. 306 of the Code of Civil Procedure as amended by the Law of the 8th of March, 1906, it is necessary to remand it for a new trial in the court below. See section 306 of the Civil Code as amended by the Amendatory Act of the 8th of March, 1906; Laws of 1906, page 164.

From all that appears in the record, we are satisfied that the case was not tried in the court below with that care and attention which every case, however insignificant, merits, and as both parties have appealed and seem to be dissatisfied with the judgment of the court below, and have submitted the case without argument, we think it is better to reverse the judgment of the court below and remand the case for another trial, or for such other disposition as may be made of the same by the court to which it is remanded.

*Remanded for new trial.*

Chief Justice Quiñones and Justices Hernández, Figueras and Wolf concurred.